233 So.2d 305 (1970)
Sebron Richard STEWART, Plaintiff-Appellant,
v.
Rosemary Clayton STEWART, Defendant-Appellee.
No. 7643.
Court of Appeal of Louisiana, First Circuit.
March 9, 1970.
*306 Fannie E. Burch, Amite, for plaintiff-appellant.
Ponder & Ponder, Amite, for defendant-appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Plaintiff instituted this suit against his wife seeking a divorce on the grounds of adultery, modification of a custody award rendered in a judgment of separation from bed and board between the parties, and disavowal of a child born to the defendant after the judgment of separation.
The trial judge held that the defendant and her children, including the one to be disavowed, are residents of and domiciled in Tennessee and sustained defendant's declinatory exception of jurisdiction over the persons of the children. C.C.P. Article 925. Plaintiff now appeals from this judgment which, for reasons hereinafter stated, we affirm.
We are not favored with written reasons for judgment nor any testimony that might have been taken at the hearing on the exception. However, the issues presented to the trier of fact for consideration are solely ones of law and for the purpose of determining the correctness of the judgment now appealed we shall accept as true certain allegations of fact which are uncontested as they appear in the pleadings of both parties.
Plaintiff and defendant were married on April 12, 1963 in Livingston Parish, Louisiana. The matrimonial domicile was established in Tangipahoa Parish where the parties resided together until January 10, 1967, when defendant left. She filed suit for separation on January 16, 1967.
On September 19, 1967, defendant obtained a judgment of separation from the plaintiff and was awarded the care, custody and control of their two minor children, then the only issue of the marriage. Shortly thereafter defendant and the children moved to Kingston Springs, Cheatham County, Tennessee where they have continued to remain.
On March 26, 1968 defendant gave birth to another child, a daughter, and notified plaintiff of this fact by letter dated April 8, 1968.
Plaintiff filed the instant action on April 24, 1968 alleging, inter alia, that he and defendant had not lived together since January 10, 1967 and that because of the hostility on the part of defendant and threats of violence against him by members of her family, he was not permitted to see defendant or exercise rights of visitation with his children. Plaintiff further avers that because of such threats it was "physically impossible" for him to have cohabited with defendant since they ceased living together on January 10, 1967. Plaintiff also alleges that the last time he saw his wife was on July 1, 1967 when the suit for separation was heard on the merits. He claims that defendant left for Tennessee shortly after the judgment of separation on September 19, 1967 and he did not know of her pregnancy or the birth *307 of the child until he received her letter of April 8, 1968.
On information and belief, plaintiff alleges that his wife is living in open adultery in Tennessee with a named corespondent which entitles him to a divorce on the grounds of adultery and renders her unfit for the continued custody of the two older children.
There is attached to this record defendant's Exhibit #1 which is a copy of a petition dated May 6, 1968 filed by her in the Chancery Court for Cheatham County, Tennessee for a divorce from plaintiff on the grounds of certain alleged cruelties which are not germane to the pertinent issues. However, the dates therein set forth coincide with and corroborate those mentioned in plaintiff's petition.
It should be mentioned at this point that the trial judge, while sustaining the exceptions as to the change of custody and action in disavowal, stated that such did not preclude plaintiff's rights to proceed with his demands for a divorce on the grounds of the alleged adultery. The record before us does not disclose any evidence that plaintiff has proceeded further than to perfect the instant appeal.
Under the aforementioned facts the issues for resolution are two-fold, both relating to an adjudication on a matter of status and jurisdiction of the court a quo to make such determinations. One issue is whether or not plaintiff can proceed to obtain a judgment awarding him the custody of the two older children. The other issue is whether or not plaintiff can proceed in the court of his domicile to disavow the youngest child who resides in Tennessee with its mother. On the first issue we have the benefit of prior jurisprudence. The second issue, to our knowledge, is res nova in the jurisprudence of this state.
While we shall discuss these issues in the order mentioned it is well to consider our fundamental rules on jurisdiction. Article 1 of the Code of Civil Procedure defines jurisdiction as:
"* * * [T]he legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled."
Subsequent articles prescribe that there must be jurisdiction over the subject matter[1] and over the person.[2] The articles further recognize that an action may be in rem[3] or quasi in rem.[4] The last remaining article of this group provides for jurisdiction over status.[5]
These classifications as to jurisdiction form the basis for the declinatory exceptions provided for in C.C.P. Article 925 (5)(6), which relate to jurisdiction over the person and the subject matter respectively. We are here concerned with jurisdiction over the persons of the children whose custody plaintiff seeks and the child he now endeavors to disavow. Both of these demands are subject to the provisions of Articles 6 and 10 of the Code of Civil Procedure which read as follows:
C.C.P. Article 6
"Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against *308 a party to an action or proceeding. This jurisdiction must be based upon:
(1) The service of process on the defendant, or on his agent for the service of process;
(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state; or
(3) The submission of the party to the exercise of jurisdiction over him personally by the court, or his express or implied waiver of objections thereto."
C.C.P. Article 10
"A. A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
(1) An adoption proceeding if the person who has legal custody of the child is domiciled, or the child is lawfully, in this state, and the court has personal jurisdiction over the adoptive parent; or if the latter is domiciled in this state, and the court has personal jurisdiction over the legal custodian;
(2) An emancipation proceeding if the minor is domiciled in this state;
(3) An interdiction proceeding if the person sought to be interdicted is domiciled in this state, or is in this state and has property herein;
(4) A tutorship or curatorship proceeding if the minor, interdict, or absentee, as the case may be, is domiciled in this state or has property herein;
(5) A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state;
(6) An action to annul a marriage if one or both of the parties are domiciled in this state; and
(7) An action of divorce, or of separation from bed and board, if one or both of the spouses are domiciled in this state and, except as otherwise provided by law, the grounds therefor were committed or occurred in this state, or while the matrimonial domicile was in this state.
B. For purposes of Subparagraphs (6) and (7) of Paragraph (A) of this article, if a spouse has established and maintained a residence in a parish of this state for a period of twelve months, there shall be a rebuttable presumption that he has a domicile in this state in the parish of such residence. Amended by Acts 1968 No. 172, § 1." (Emphasis added)
Now to the first issue. It is particularly noted that Section (5) of Article 10 quoted above authorizes this particular action over status if the minors are domiciled or are physically in the state. The two older children are not within this state. They reside with their mother who has the legal custody. Therefore, the domicile of their mother is also their domicile. C.C. Article 39; C.C.P. Article 10; Nowlin v. McGee, 180 So.2d 72 (2d La. App., 1965, writs refused, 248 La. 527, 180 So.2d 541). Nowlin v. McGee, supra, was quoted with approval in Pattison v. Pattison, 208 So.2d 395 (4th La.App., 1968, writs refused, 252 La. 168, 210 So.2d 52).
The positions of the parties in the case at bar are similar to those of relator and relatrix in Nowlin, where Judge Bolin speaking for the court succinctly stated: (180 So.2d 72, 73)
"Numerous cases are cited in support of the theory that Louisiana has continuing jurisdiction over all matters incidental to the divorce proceedings. See Lukianoff v. Lukianoff, 166 La. 219, 116 So. 890 (1928); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Graves v. Graves (La.App. 2 *309 Cir., 1960) 122 So.2d 350; Blackburn v. Blackburn (La.App. 2 Cir., 1964); 168 So.2d 898; Wheeler v. Wheeler, 184 La. 689, 167 So. 191 (1936). Examination of these authorities convinces us there are distinguishing features in each of the cited cases.
The contrary position adopted by relatrix is that once the final divorce was rendered and she was awarded custody of her children she was at liberty to change her domicile and that of the children to Texas and that thenceforth the Louisiana court is without jurisdiction to change or modify the custody order. This contention is in accord with the decisions of the Louisiana Supreme Court in State ex rel. Huhn v. Huhn, 224 La. 591, 70 So.2d 391 (1954); and with that in In re Ackenhausen (La. App. 4 Cir., 1962) 146 So.2d 37, affirmed by the Louisiana Supreme Court in 244 La. 730, 154 So.2d 380 (1963). Both of the cited cases quoted from the United States Supreme Court case of People of State of N. Y. ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133, in which it was held that if the court of the state which rendered the judgment (of custody) had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause."
For the same reasons, we conclude that the district court is without jurisdiction to modify its previous judgment as to custody.
We now turn to the remaining issue of disavowal. It is axiomatic that the proof required in an action en desaveu is probably the most demanding of any of our causes of action. There is no need to reiterate here the strong policy considerations therein involved. The child who is subject to this present action was born in Tennessee and has continued to reside there with its mother. Its custody was not adjudicated at the time of the judgment of separation on September 19, 1968. However, the child was born on March 28, 1968 or 189 days following the judgment of separation. Under Louisiana law she is legally presumed to be plaintiff's child. C.C. Article 184 et seq.
Our reasons for concluding that the district court is without jurisdiction to proceed with this action in disavowal also includes the applicability of Articles 6 and 10 of the Code of Civil Procedure. The provisions thereof are restrictive. Article 6 provides that the jurisdiction over the person "must be based upon" personal service on the defendant or his agent, or on an attorney appointed to represent an "absentee * * * who is domiciled in this state", or submission by personal appearance. The purpose of this article is to satisfy the requirements of due process of the federal constitution. The appointment of an attorney in such a case as this is not to obtain service on the child but to insure that the legitimacy of the child will be maintained wherever possible and that the strict requirements of proof are met.
States may enact legislation to permit personal actions to determine status and still meet the requirements of due process of law as first announced in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). Louisiana has done this through Article 10 of the Code of Civil Procedure. Significantly, however, the first paragraph of the article provides that such proceedings may occur "only" under the seven enumerated conditions therein set forth and an action in disavowal of paternity is not one of the conditions listed. We can assume that the omission of this class of action pertaining to status was either an oversight on the part of the redactors of the Code or it was their intention to restrict its scope. In the absence of any prior jurisprudential or statutory expressions on the subject, we are compelled to follow the distinctly stated provisions of the article and apply it, insofar as extraterritorial effect is concerned, to "only" the specifically enumerated actions. We feel fortified in this interpretation by the *310 fact that in each of the conditions listed in the article particular reference is made to domicile or physical presence of the adverse party in the state.
We know of no law, codal or statutory, that could be construed so as to fairly determine that the child sought to be disavowed herein is either domiciled in this state or has a tutor upon which service may be had to obtain jurisdiction. While Article 39 of the Civil Code provides the domicile of the father is the domicile of the minor, it is equally well settled that a judgment of divorce or separation and subsequent award of custody changes the domicile of the minor to its legal custodian. Nowlin v. McGee, supra.
If it is argued that the child, having been born after the judgment of separation, is not included in the custody order and therefore the "legal" father is still the administrator of his estate and service may be had on the child through the father as administrator, we must look to Article 221 of the Code of Civil Procedure. The last paragraph of this article provides that the administration of the father over the estate of his minor child ceases upon the rendition of a judgment of separation between the parents.
There are equitable considerations advanced that the rights of plaintiff are hollow indeed if he cannot proceed to have the child disavowed in the courts of this state and he must go to Tennessee to do so. However, equal consideration is due the proposition that the child should not be required to come to Louisiana to defend its paternity in view of the very strong presumption in favor of its legitimacy. These considerations can best be resolved by the Legislature, whose previous expression in the area of status determinations has been restrictive.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] C.C.P. Article 2

"Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."
[2] C.C.P. Article 6.
[3] C.C.P. Article 8.
[4] C.C.P. Article 9.
[5] C.C.P. Article 10.